## RUSS et al. v. DUFF et al.
### No. 11212.

Court of Civil Appeals of Texas. Dallas.

April 30, 1932.

Emil Corenbleth, of Dallas, for appellants.

W. F. Bane, Nelson Phillips, and C. M. Means, all of Dallas, for appellees.

JONES, C. J.

Appellants, Morris Russ and E. R. Meissner, instituted this suit in a district court of Dallas county to enjoin appellees, Asa W. Duff and H. E. Duff, from using the same or similar trade-names in the conduct of their business which were used by appellants. The Southwestern Bell Telephone Company was also made a party defendant and appellants sought to restrain it from listing the trade-names for appellees in any telephone directory. A trial on the merits of the case resulted in a judgment against appellants, and an appeal has been duly perfected to this court.

The telephone company disclaimed any interest in the subject-matter of the litigation as between the other parties, but in effect claimed the right to give to appellees telephone service under said trade-names, and to continue to do so, unless restrained by the court. As the disposition of the case against the telephone company depends on the disposition made as between the other parties, it will not be referred to in this discussion; as H. E. Duff disclaims any interest in the business of appellee, his connection with the suit will not be discussed, and the term appellee will refer to Asa W. Duff.

The undisputed facts show that appellants are partners in the sewing machine business, selling sewing machines and other machinery used in the garment manufacturing trade; that they opened their business in March 1929, in the city of Dallas, under the trade-name of "Dallas Sewing Machine & Equipment Company," and that they had continued to use such trade-name to the date of the trial, November 2, 1931; that in the early part of the year 1930, they adopted the additional trade-name of "Dallas Sewing Machine Company," and continued to use this name to the date of trial; that under the use of these names they built up a large and profitable business and established a reputation for careful and efficient service, selling only high-grade standard brands and doing only high-grade repair work; that in furtherance of said business, under said trade-names, they sent out many letters to the trade and advertised their business extensively, and had these trade-names placed in the city and telephone directories; that they removed from their place of business on Poydras street to 907 Jackson street; that their business covers a large territory, including the state of Texas and the neighboring states of Colorado, Oklahoma, Arkansas, and New Mexico; that by their labor, close attention to business, and costly advertising under their trade-names, they had acquired an extensive and valuable good will and are well known in the sewing machine business, under such names, throughout said territory; that the volume of their business has steadily increased to where they are now doing a busi-

ness of approximately $25,000 per year, and no other business of a similar kind had used such names in their territory until about August 17, 1931, the date on which they filed their original petition in this case, and the date appellee entered, or proposed to enter, the same territory with trade-names, one of which is identical with one of appellants' and the other so similar to appellants' other name, as to be confused with it.

On August 20, 1931, appellee directed a letter to appellants, in which he informed appellants that he had registered the name of the "Dallas Sewing Machine Company," both in the county clerk's office of Dallas county and with the secretary of state at Austin, and requested that appellants cease to use such name in their business; that at the time appellee registered the trade-name of "Dallas Sewing Machine Company" he knew that appellants were using said trade-name, and knew also that this name and that of "Dallas Sewing Machine & Equipment Company" were painted on a window of appellants' place of business; that appellee, under the trade-names of "Dallas Sewing Machine Company" and "Dallas Sewing Machine Adjusting Company," is conducting the same line of business as appellants, and is using the building next door to appellants, which has the number of 907½, and has had such name entered in the telephone directory of the Southwestern Bell Telephone Company.

The undisputed evidence further shows that appellants did not comply with the law in filing the required certificates with the county clerk, in order to use lawfully the trade-names they had adopted, until September 14, 1931, when they filed such certificate with the county clerk in respect to the name of "Dallas Sewing Machine Company," and on September 16, 1931, filed such certificate in respect to the name "Dallas Sewing Machine & Equipment Company." The amended petition on which appellants went to trial was filed September 26, 1931, after the law, in respect to the use of trade-names, had been fully complied with, but there was no such compliance when the original petition was filed. Appellee filed his certificate in reference to the trade-names attempted to be assumed by him, in August, 1931, and at that time no certificates had been filed by appellants, although they had been using the trade-names for approximately two years.

The court was requested to file findings of facts and conclusions of law, and complied with this request by adopting the agreed statement of facts, and by filing his conclusion of law. In this respect, the court concludes: " * * * The plaintiffs, in not filing the certificate, were operating the business under the two trade names of Dallas Sewing Machine and Equipment Company and Dallas Sewing Machine Company, in violation of Article 5924 of the Revised Civil

Statutes of the State of Texas, and of Articles 1067 and 1070 of Vernon's Revised Penal Code of 1925. They are, therefore, attempting to come into a Court of Equity, and enjoin the defendants from using the same, or similar names, as they themselves used, without compliance with the law as to the use of said names. They do not, therefore, come into Equity with clean hands, and the Court cannot grant the relief prayed for. It is upon this ground that the Court denies the injunction."

■■ The case was tried on appellants' first amended petition, and the status of appellants in respect to the use of their trade-names, existing at the time of the filing of such petition and at the time of trial, should be considered by the court, rather than such status as it existed at the time of the filing of the original petition. The statutes referred to by the trial court were enacted for the benefit of the public, and not for the benefit of a competitor in the business of another. The effect of these statutes, in reference to the validity of a contract entered into by a business partnership operating under a trade-name, without having filed the required statutory certificate, has been so frequently construed in this state that the law is settled in respect thereto. This construction is that, if a firm or individual doing business under a trade-name, in violation of such statutes, has entered into a contract otherwise valid, under such trade-name with another, such contract is valid and enforceable. Paragon Oil Syndicate v. Rhoades Drilling Co., 115 Tex. 149, 277 S. W. 1036; Bristol v. Chas. F. Noble Oil & Gas Co. (Tex. Com. App.) 283 S. W. 163; Hays v. Walsh (Tex. Civ. App.) 280 S. W. 877; Roper v. Hall (Tex. Civ. App.) 280 S. W. 289; Levytansky v. Bernon (Tex. Civ. App.) 279 S. W. 304; Fechner v. A. H. Belo & Co. (Tex. Civ. App.) 283 S. W. 926; Lipscomb & Co. v. Ordonez (Tex. Com. App.) 285 S. W. 1060; Whitton Oil & Gas Co. v. Trapshooter Development Co. (Tex. Civ. App.) 291 S. W. 267.

■■ There is no suggestion in the pleading or the evidence that, during the time they were operating under their assumed names, any contracts of appellants were tainted with fraud, because of the adopted names, or that any one suffered by reason of the unlawful use of such names. Therefore it follows, from the rule of law announced by the above authorities, that all of the contracts they entered into under their trade-names were legal and enforceable, from which appellants are entitled to all of the benefits that will legitimately flow therefrom. Manifestly, a benefit of no mean consideration is the value of the names under which such business was secured. As appellants' business extended over this and other states, it necessarily follows that a large portion of the trade whose business they solicited knew them not as individuals but by their trade-names. It was these trade-names that were advertised to the public, and under which appellants exclusively operated, and by means of which they enjoyed an increasing business. In other words, the trade-names "Dallas Sewing Machine Company" and "Dallas Sewing Machine & Equipment Company" became a valuable property right to appellants, and if the law regulating the use of trade-names had been complied with by appellants, no court of equity would hesitate to protect them in such property right.

■ Appellants, by their amended petition, came into court after having fully complied with the statutes regulating the use of their trade-names. On the date such amended petition was filed, and on the date of the trial, they were in no sense violators of any law of this state, in respect to their trade-names, but, on the contrary, were legally doing business under two trade-names, in the use of which all regulatory statutes had been complied with. They seek relief in no sense protecting them from the consequences of any past misconduct, and in no sense enabling them in the future to do anything that is not in strict conformity to the statutes regulating the use of trade-names. Under the condition that existed at the time of the trial of this case, we do not believe a court of equity should be closed against them, because of some former delinquency on their part with reference to the use of the names under which they are doing business. American Sugar Refining Co. v. McFarland et al. (D. C.) 229 F. 284, 287; Devlin v. Peek et al. (C. C.) 135 F. 167.

■ The effect of the judgment of the trial court in the instant case is to turn over to appellee as a gift a valuable property right, consisting of these trade-names, which had been acquired by appellants through means of costly advertising and integrity in the business of dealing with the trade demanding their merchandise and services. This we do not believe a court of equity should do. It is therefore our opinion that, as we believe this to be a case of an erroneous application of law by a trial court to undisputed evidence, it is the duty of this court to enter the judgment that should have been entered by the trial court, and to stay appellee in the use of trade-names that constitute unfair competition with the established business of appellants.

The judgment of the trial court is reversed, and the cause is here rendered in favor of appellants, permanently enjoining appellees from the use of the trade-names in question, and enjoining appellees and the Southwestern Bell Telephone Company from listing such trade-names for appellees in the future telephone directories.

Reversed and rendered.